MITCHELL *et al.* v. MURPHY.

(*Circuit Court, W. D. Pennsylvania.* August 5, 1890.)

1. TRUSTS—IMPLIED TRUSTS.

A deed from B., M., and P. to Joseph Pennock for a tract of land contained the recital: "And whereas, the said land is intended to be for a residence for William Murphy and his family, and the said Joseph Pennock pays towards the purchase money $1,200, and Isaac M. Pennock * * * pays $500, and Archibald Paull * * * pays $500." The conveyance was to Joseph Pennock, "in trust, as well for the said Isaac M. Pennock and Archibald Paull as for himself, in the proportions the amount paid by each bears to the whole purchase money." These persons put Murphy into possession for no defined period. *Held*, that there was no implied trust in favor of William Murphy and his family, and his possession was that of a mere tenant at will.

2. ADVERSE POSSESSION.

Murphy, with his family, remained in possession of the land until his death, and thereafter his widow continued in possession for more than 21 years. *Held* that, as her husband's possession was in subordination to the title of the rightful owners, her continued possession was of the same character, and that, in the absence of evidence that she had renounced the privity between her and the rightful owners, or by some unequivocal act had severed it, she could not avail herself of the statute of limitations.

Ejectment.

In pursuance of a written stipulation this case was tried by the court without the intervention of a jury. The following facts, therefore, are found by the court:

(1) The title to the piece of land described in the writ in this case being in Isaac Beeson, George Meason, and Charles Peach, these persons, by their deed dated March 27, 1851, for the stated consideration of $2,200 therein acknowledged as having been paid by Joseph Pennock, Isaac M. Pennock, and Archibald Paull, conveyed said piece of land to said Joseph Pennock in trust as follows, namely: "To have and to hold the same, with the appurtenances thereunto belonging, unto him, the said Joseph Pennock, his heirs and assigns, in trust, as well for the said Isaac M. Pennock and Archibald Paull as for himself, in the proportions the amount paid by each bears to the whole purchase money." The said deed, after reciting the chain of title from the commonwealth of Pennsylvania down to said Peach to several tracts of land of which the piece here in question is a part, contains this recital just before the conveying clause, namely: "And whereas, the said Peach has sold fifty acres of the same to Joseph Pennock, of the city of Pittsburgh, in trust, as hereinafter stated; and whereas, the said land is intended to be for a residence for

William Murphy and his family, and the said Joseph Pennock pays towards the purchase money twelve hundred dollars, and Isaac M. Pennock, of the city of Pittsburgh, pays five hundred dollars, and Archibald Paull, of the city of Wheeling, Va., pays five hundred dollars." (2) The said Joseph Pennock and Archibald Paull had each married a sister of said William Murphy. The latter, at the date of said deed, was in ill health, and he continued an invalid until his death. (3) In the year 1851, soon after the date of said deed, said Joseph and Isaac M. Pennock and Archibald Paull put said William Murphy into possession of said piece of land, and he resided thereon with his wife, Sarah Murphy, the present defendant, and their children, until his death, in 1860, holding the land during his occupancy in subserviency to the title of said Pennocks and Paull. (4) After the death of her husband, the said William Murphy, the defendant remained in the possession of said piece of land, residing thereon with her children, and her possession thereof has been continuous from her husband's death down to this time. (5) On July 2, 1866, said Joseph and Isaac M. Pennock executed a written lease, whereby they let and demised to the defendant said piece of land for the term of 15 years from April 1, 1866, for the use of herself and the children of William Murphy and herself, at a nominal rent, and on July 6, 1866, she executed and delivered to the agent of said Pennocks an instrument of writing of which the following is a copy:

"I, Sarah Murphy, widow of William Murphy, deceased, for myself and the children of the said William, hereby acknowledge and declare that as to 12-22 and 5-22 parts of the tract of land on the Connellsville road, in N. Union township, Fayette county, Pennsylvania, containing about fifty acres, on which we now reside, and have resided since April 1st, 1851, we hold and have held the same under and as tenants at will of Joseph Pennock and Isaac M. Pennock, in connection with Archibald Paull, and according to his last will; we now accepting a lease of said interest from said Joseph and Isaac, for the term of fifteen years, from April 1, 1866, dated July 2nd, 1866, upon the rent and terms therein stated. Witness my hand and seal this sixth day of July, A. D. 1866.                     SARAH B. MURPHY. [Seal.]
"Test: JOHN COLLINS."

(6) The said Archibald Paull died in the year 1854, and all the right, title, and interest in and to said piece of land which he acquired under the aforesaid deed of March 27, 1851, by virtue of his last will and otherwise, became vested in the plaintiffs before the date of this suit, viz., the 6th day of September, 1888. (7) When the writ in this case was served on the defendant she was residing on said piece of land with one daughter, a child of William Murphy and herself, and a granddaughter, the minor child of a deceased daughter, and this child and grandchild still live with her on the land. (8) The taxes on said piece of land were paid by William Murphy, or by the defendant, during his life-time and occupancy, and since his death by the defendant. The land was assessed in the name of Joseph Pennock from 1851 down to 1867, and since then has been assessed in the defendant's name.

*J. M. Stoner* and *Edward Campbell*, for plaintiffs.
*S. L. Mestrezut*, for defendant.

ACHESON, J. Upon the facts here appearing, I am quite unable to see how the defendant can successfully resist a recovery by the plaintiffs. Two grounds of defense are relied on. In the first place, the defendant sets up title under the statute of limitations. But undeniably her husband, William Murphy, entered by the permission of Joseph and Isaac M. Pennock and Archibald Paull, and his possession never ceased to

be in subordination to their title. It is well settled that when the original possession by the holder of land is in privity with the title of the rightful owner, nothing short of an open and explicit disavowal and disclaimer of holding under that title and assertion of title in himself brought home to the other party will enable such holder to avail himself of the statute of limitations. *Cadwalader* v. *App*, 81 Pa. St. 194; *Zeller's Lessee* v. *Eckert*, 4 How. 289. But William Murphy never disavowed the title of those who put him into possession, nor did he ever indicate in any manner an intention to hold adversely. And, as his possession was in subserviency to the title of the rightful owners, the continued possession, upon his death, of his widow, the defendant, was of the same character. *Bannon* v. *Brandon*, 34 Pa. St. 263. In that case it was held that the widow of a tenant for life, who continues in possession without any contract between herself and the owner of the land, holds in subordination to the title of the latter, and not adversely. Having entered by right under her husband, when the right ceased and she held over, she was at least a tenant by sufferance. Id. Now it is not shown that the defendant ever renounced the privity between her and the rightful owners, or by any unequivocal act severed that privity. That she paid the taxes was nothing more than her plain duty, since she had the full and free use and enjoyment of the premises. Without regard, then, to the transaction between the Pennocks and the defendant in the year 1866, the lease executed by them, and "the declaration of tenure" executed by her, the conclusion cannot be avoided that the defense of the statute of limitations set up against the plaintiffs has no foundation to rest on.

The other and totally different ground of defense taken by the defendant is that the right of possession to the land is in the surviving family of William Murphy "for a residence," such right being evidenced by the recital in the deed from Beeson and others to Joseph Pennock, viz.: "And whereas, the said land is intended to be for a residence for William Murphy and his family," etc., and the intention executed, by putting him into possession. But William Murphy was not a party to that deed. Neither did he contribute aught to the consideration paid. The purchase was altogether *res inter alios acta*. The deed contains an express trust declared in very apt words in favor of Isaac M. Pennock and Archibald Paull, but none declared in favor of William Murphy. Evidently the deed was drawn by one learned in the law, and if it had been intended to create any trust for the benefit of William Murphy and his family the intention would have been expressed, and not left to doubtful inference. When read in connection with the whole deed, we find that the manifest purpose of the particular recital, in which William Murphy's name appears, was to explain the transaction as between Joseph Pennock, Isaac M. Pennock, and Archibald Paull, and define their respective interests in the land. Their expressed benevolent intention to provide a place of residence for William Murphy and his family imposed no legal obligation upon them, and clothed him with no enforceable right. And when they voluntarily gave him possession for no defined period he became, at the most, a mere tenant at will.

That the plaintiffs have the legal title upon which to found an action of ejectment cannot be doubted. The trust in Joseph Pennock under the deed of March 27, 1851, was a dry trust. The statute, therefore, executed the use, and the legal title to the undivided five twenty-second parts of the land passed to Archibald Paull. *Moore* v. *Shultz*, 13 Pa. St. 98; *Eckels* v. *Stewart*, 53 Pa. St. 460; *Webster* v. *Cooper*, 14 How. 488.

And now, August 5, 1890, the court finds in favor of the plaintiffs, and that they do recover the undivided five twenty-second parts of the piece of land described in the plaintiffs' *præcipe* and the writ, and six cents damages, and costs.

Let judgment be entered upon the finding of the court in favor of the plaintiffs at the end of four days *sec. reg.*, unless, in the mean time, a motion for a new trial should be made.